IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | CHAPTER: | 7 |
| CONSULTING ASSOCIATES OF | ) | CASE NO.: | 18-00455 |
| TENNESSEE, INC. | ) | JUDGE: | MASHBURN |
|     Debtor. | ) | | |
| | ) | | |
| TIMOTHY G. NIARHOS, TRUSTEE | ) | ADV. PROC. | 18-9_____ |
|     Trustee and Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| ELBERT L. LUMLEY. and | ) | | |
| SAMUEL HARRIS | ) | | |
|     Defendants. | | | |

## ADVERSARY COMPLAINT

The Chapter 7 Trustee, Timothy G. Niarhos, ("Trustee" or "Plaintiff"), by and through undersigned counsel, files this action against Defendants, Elbert L. Lumley and Samuel Harris, seeking a monetary judgment for fraudulent transfers and illegal distributions, and is further seeking an Order requiring turnover of funds to the bankruptcy estate. The Trustee's federal grounds for these claims are 11 U.S.C. §§ 542, 544, 548 and 550; and supplemental state grounds are Tenn. Code Ann. §§ 48-16-401, 48-18-301, 48-18-403, 66-3-305, 66-3-306, 66-3-308, and the common law "Trust Fund" doctrine recognized in Tennessee. In support of this Complaint, the Plaintiff states as follows:

### I. PARTIES

1. Plaintiff Timothy G. Niarhos, Trustee, was duly appointed Chapter 7 Trustee and continues to serve as Trustee in the underlying bankruptcy case, *In re: Consulting Associates of Tennessee, Inc.*, Case No. 18-00455, filed under Chapter 7 of Title 11, United States Code, in the United States Bankruptcy Court for the Middle District of Tennessee on January 25, 2018 (the "Bankruptcy Case") pursuant to 28 U.S.C. § 586(a)(1), 11 U.S.C. §§ 701 and 702, and Docket Entry

No. 2 in the Bankruptcy Case. The Trustee has the capacity to bring this lawsuit pursuant to 11 U.S.C. § 323.

2. Defendant Elbert L. Lumley ("Mr. Lumley") was a stockholder of Consulting Associates of Tennessee, Inc. *fdba* D&D Transportation, Inc. (the "Debtor") at times relevant to this Complaint. Mr. Lumley was also the president of the Debtor. Mr. Lumley is a resident and citizen of Tennessee and may be served with process at 115 Saint Andrews Drive, Hendersonville, Tennessee 37075, or wherever else he may be found.

3. Defendant Samuel Harris ("Mr. Harris") was a minority stockholder of the Debtor at times relevant to this Complaint. Mr. Lumley was also the president of the Debtor. Mr. Lumley is a resident and citizen of Tennessee and may be served with process at 1016 Sandy Valley Road, Hendersonville, Tennessee 37075, or wherever else he may be found.

4. Together, Mr. Lumley and Mr. Harris are referred to as the "Defendants" within this Complaint.

## II. JURISDICTION & VENUE

5. Jurisdiction to entertain this proceeding is conferred upon this Court by 28 U.S.C. § 151 and § 157(b). Pursuant to 11 U.S.C. § 105(a), this Court may issue any order, process or judgment necessary or appropriate to carry out the provisions of this title.

6. Venue to entertain this proceeding is properly laid with this Court pursuant to 28 U.S.C. § 1408 and § 1409(a).

7. This adversary proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b).

## III. STATEMENT OF FACTS

*A. Pre-Bankruptcy*

8. Prior to the Debtor filing for bankruptcy relief, Mr. Lumley was a shareholder of the Debtor.

9. The Debtor's other shareholders included Dale Colclazier and Mr. Harris.

10. The Debtor was formed as a Tennessee corporation in 2011 under the name D&D Transportation, Inc.

11. On or about January 18, 2017, the Debtor changed its named from D&D Transportation, Inc. to Consulting Associates of Tennessee, Inc.

12. During the periods of 2014 through 2017, the Debtor generated the following annual revenues:
    a. $2,785,826 (2014)
    b. $3,119,864 (2015)
    c. $3,912,963 (2016)
    d. *To be Determined* (2017)[1]

13. On or about December 27, 2016, the Debtor entered into an Asset Purchase Agreement ("APA") to sell substantially all of its assets to a Florida corporation named Venture Worldwide, Inc. A copy of the Asset Purchase Agreement is attached to the Debtor's Bankruptcy Petition and is incorporated herein by reference.

14. The sale of the Debtor's assets was not marketed to any party other than the buyer, Venture Worldwide, Inc.

15. The purchase price pursuant to the APA was $150,000.00.

16. Mr. Lumley executed the APA on behalf of the Debtor, as seller. Immediately following the execution of the APA, Mr. Lumley was employed by the buyer, Venture Worldwide, Inc., in a sales role in which he is paid on a commission basis.

17. Mr. Lumley was also compensated $100,000 by Venture Worldwide for a "non-compete agreement."

18. The original purchase price offered by Venture Worldwide, Inc. was $250,000. However, in the month(s) leading up to the sale, Mr. Lumley's non-compete agreement was discussed, and the purchase price offer was reduced from $250,000 to $150,000.

19. Of the $150,000 sale price that was paid by Venture Worldwide, Inc. to the Debtor, Mr. Lumley took corporate action to pay $105,000 to himself, representing a payout of his 70% ownership of the Debtor's stock (the "Lumley Ownership Payment").

---

[1] The Trustee has employed an accountant in the Bankruptcy Case (See Docket No. 27), who is presently working with the Debtor's pre-bankruptcy CPA to verify and prepare the 2017 financial information, and possibly amending prior tax returns which could affect the figures stated herein.

20. Also, from the $150,000 sale price, Mr. Lumley took corporate action to pay $5,100 to Mr. Harris, representing a payout of his 5% ownership of the Debtor's stock (the "Harris Ownership Payment").

21. At the time of the sale, a shareholder dispute between Mr. Lumley and Dale Colclazier ("Mr. Colclazier") was pending in the Chancery Court for Sumner County, Tennessee (the "Colclazier State Court Suit"). Within the Colclazier State Court Suit, which was filed on June 26, 2017, Mr. Colclazier was pursuing causes of action including (i) a breach of contract against the Debtor corporation, (ii) breach of fiduciary duty against Mr. Lumley, (iii) director's liability against Mr. Lumley, (iv) conversion against Mr. Lumley, and (v) piercing of the corporate veil as to Mr. Lumley.

### B. *Post-Bankruptcy*

22. Mr. Lumley, on behalf of the Debtor, engaged bankruptcy counsel and authorized the filing of the underlying Chapter 7 bankruptcy case on January 25, 2018 (the "Petition Date"), in consideration of the inability to reach a resolution on the existing shareholder dispute with Mr. Colclazier.

23. Within the statements and schedules to the Petition, the Debtor scheduled outstanding debts to the Internal Revenue Service ($45,000), the Tennessee Department of Revenue ($9,500), and to Mr. Colclazier ($200,000). The debt to Mr. Colclazier was marked as contingent, unliquidated and disputed.

24. A meeting of creditors was held on February 26, 2018 (the "Meeting of Creditors"), wherein Mr. Lumley appeared and provided sworn testimony.

25. On February 27, 2018, the Trustee filed a *Notice of Assets & Request for Notice to Creditors* wherein a proof of claim deadline of May 29, 2018 was established. (*See* Bankr. Docket No. 11).

26. As of the date of this Complaint, a total of three (3) claims have been filed; however, the claim of the Internal Revenue Service indicates the lack of tax return filings for 2016 and 2017 and therefore its figures are currently estimated. Also, while a proof of claim for the scheduled debt to the Tennessee Department of Revenue has not been filed, it is believed that the Debtor is yet to file

the applicable state returns. Two (2) claims have been filed by Mr. Colclazier stating he is owed a total of $245,000.[2]

27. A 2004 Examination of Mr. Lumley was conducted by undersigned counsel on April 6, 2018 (the "2004 Exam"), wherein Mr. Lumley again appeared and provided sworn testimony. Mr. Harris was also present at the 2004 Exam.

28. Based on Mr. Lumley's sworn testimony at the meeting of creditors concerning the claims of Mr. Colclazier, as amended and restated in his sworn testimony at the 2004 Exam, he admits that a portion of Mr. Colclazier's claims are liquidated and undisputed. Such amount not in dispute, according to Mr. Lumley's prior testimony is $100,000 (inclusive of both debt and equity).

**PLAINTIFF'S FIRST CLAIM FOR RELIEF**
**(Constructive Fraudulent Transfer - Lumley)**
**(11 U.S.C. §§ 544, 548, and 550; and Tenn. Code Ann. §§ 66-3-305, 66-3-306, and 66-3-308)**

29. The Plaintiff hereby restates and incorporates by reference all preceding paragraphs.

30. The Trustee, pursuant to 11 U.S.C. § 544, has the rights and powers of, or may avoid any transfer of property of the debtor that is voidable by, a judicial lien creditor of the debtor as of the Petition Date.

31. By virtue of being the president and majority stockholder of the Debtor, Mr. Lumley is, and at all times relevant was, an "insider" of the Debtor as that term is defined in the Bankruptcy Code and the Tennessee Code.

32. The Debtor transferred an interest in its property (namely, the Lumley Ownership Payment of $105,000 from the asset sale proceeds) to Mr. Lumley without payment to its then existing creditors.

33. The Lumley Ownership Payment occurred on or about December 28, 2016; and, therefore, within two (2) years of the Petition Date.

---

[2] Counsel for the Trustee has reviewed the Colclazier proofs of claims, and has conducted a telephonic interview with Mr. Colclazier. Following a review of the filed claims, the information learned from the interview as well as the Lumley 2004 Exam, and from a review of documents obtained, the Trustee anticipates filing an objection to the claims of Mr. Colclazier contemporaneous with the filing of this Complaint.

34. As evidenced by his prior sworn testimony, Mr. Lumley knew of the existence of company's debt at the time of the transfer.

35. The Debtor received less than a reasonably equivalent value from Mr. Lumley in exchange for the transfer of $105,000. In fact, the Debtor received no consideration for the transfer, or if any consideration was received, it was unreasonably small in relation to the amount transferred to Mr. Lumley.

36. The Debtor was insolvent at the time of the Lumley Ownership Payment, or became insolvent as a result of the Lumley Ownership Payment. This is evidenced by, *inter alia*, the debt to Mr. Colclazier – acknowledged by Mr. Lumley to be an undisputed amount of at least $100,000 – not being paid at the time of sale and the remaining assets of the Debtor post-transfer, being insufficient to pay such outstanding debt. This is further evidenced by the Debtor having not paid its tax obligations (both state and federal) corresponding to its 2016 tax year.

37. Mr. Lumley believed, or reasonably should have believed, that the transfer would (and did) cause the Debtor to not have the ability to pay the 2016 tax obligations when they became due.

38. The $105,000 transfer from the Debtor to Mr. Lumley is avoidable and recoverable by the bankruptcy estate pursuant to 11 U.S.C. §§ 544, 548, and 550.

39. Additionally, the Lumley Ownership Payment is avoidable and recoverable by the bankruptcy estate pursuant to Tenn. Code. Ann. §§ 66-3-305, 66-3-306, and 66-3-308(a)(1).

**PLAINTIFF'S SECOND CLAIM FOR RELIEF**
**(Constructive Fraudulent Transfer – Harris)**
**(11 U.S.C. §§ 544, 548, and 550; and Tenn. Code Ann. §§ 66-3-305, 66-3-306, and 66-3-308)**

40. The Plaintiff hereby restates and incorporates by reference all preceding paragraphs.

41. The Trustee, pursuant to 11 U.S.C. § 544, has the rights and powers of, or may avoid any transfer of property of the debtor that is voidable by, a judicial lien creditor of the debtor as of the Petition Date.

42. By virtue of being the president and majority stockholder of the Debtor, Mr. Harris is, and at all times relevant was, an "insider" of the Debtor as that term is defined in the Bankruptcy Code and the Tennessee Code.

43. The Debtor transferred an interest in its property (namely, the Harris Ownership Payment of $5,100 from the asset sale proceeds) to Mr. Harris without payment to its then existing creditors.

44. The Harris Ownership Payment occurred on or about January 3, 2017; and, therefore, within two (2) years of the Petition Date.

45. The Debtor received less than a reasonably equivalent value from Mr. Harris in exchange for the transfer of $5,100. In fact, the Debtor received no consideration for the transfer, or if any consideration was received, it was unreasonably small in relation to the amount transferred to Mr. Harris.

46. The Debtor was insolvent at the time of the Harris Ownership Payment, or became insolvent as a result of the Harris Ownership Payment. This is evidenced by, *inter alia*, the debt to Mr. Colclazier – acknowledged by Mr. Lumley to be an undisputed amount of at least $100,000 – not being paid at the time of sale and the remaining assets of the Debtor post-transfer, being insufficient to pay such outstanding debt. This is further evidenced by the Debtor having not paid its tax obligations (both state and federal) corresponding to its 2016 tax year.

47. Mr. Harris believed, or reasonably should have believed, that the transfer would (and did) cause the Debtor to not have the ability to pay the 2016 tax obligations when they became due.

48. The $5,100 transfer from the Debtor to Mr. Harris is avoidable and recoverable by the bankruptcy estate pursuant to 11 U.S.C. §§ 544, 548, and 550.

49. Additionally, the Harris Ownership Payment is avoidable and recoverable by the bankruptcy estate pursuant to Tenn. Code. Ann. §§ 66-3-305, 66-3-306, and 66-3-308(a)(1).

**PLAINTIFF'S THIRD CLAIM FOR RELIEF**
**(Actual Fraudulent Transfer - Lumley)**
**(11 U.S.C. §§ 544, 548, and 550; and Tenn. Code Ann. §§ 66-3-305 and 66-3-308)**

50. The Plaintiff hereby restates and incorporates by reference all preceding paragraphs.

51. The Trustee, pursuant to 11 U.S.C. § 544, has the rights and powers of, or may avoid any transfer of property of the debtor that is voidable by, a judicial lien creditor of the debtor as of the Petition Date.

52. By virtue of being the president and majority stockholder of the Debtor, Mr. Lumley is, and at all times relevant was, an "insider" of the Debtor as that term is defined in the Bankruptcy Code and the Tennessee Code.

53. The Debtor transferred an interest in its property (namely, $105,000 of the asset sale proceeds) to Mr. Lumley without payment to its then existing creditors.

54. This transfer occurred on or about December 28, 2016; and, therefore, within two (2) years of the Petition Date.

55. As evidenced by his prior sworn testimony, Mr. Lumley knew of the existence of company's debt at the time of the transfer.

56. Mr. Lumley, and the corporation, were engaged in active litigation and Mr. Lumley was keenly aware of the Colclazier State Court Suit.

57. The Debtor received less than a reasonably equivalent value from Mr. Lumley in exchange for the transfer of $105,000.

58. The Debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer. This is evidenced by, *inter alia*, the debt to Mr. Colclazier – acknowledged by Mr. Lumley to be an undisputed amount of at least $100,000 – not being paid at the time of sale and the remaining assets of the Debtor post-transfer, being insufficient to pay such outstanding debt. This is further evidenced by the Debtor having not paid its tax obligations (both state and federal) corresponding to its 2016 tax year.

59. Mr. Lumley believed, or reasonably should have believed, that the transfer would (and did) cause the Debtor to not have the ability to pay the 2016 tax obligations when they became due.

60. Mr. Lumley made the transfers with the actual intent to hinder delay or defraud Mr. Colclazier.

61. The $105,000 transfer from the Debtor to Mr. Lumley is avoidable and recoverable by the bankruptcy estate pursuant to 11 U.S.C. §§ 544, 548, and 550.

62. Additionally, the same transfer is avoidable and recoverable by the bankruptcy estate pursuant to Tenn. Code. Ann. §§ 66-3-305, 66-3-306, and 66-3-308(a)(1).

### PLAINTIFF'S FOURTH CLAIM FOR RELIEF
**(Breach of Fiduciary Duty – Lumley and Harris)**
**(Tenn. Code Ann. §§ 48-18-301 and 48-18-403, and common law "Trust Fund" doctrine)**

63. The Plaintiff hereby restates and incorporates by reference the preceding paragraphs of this Complaint.

64. Mr. Lumley was an officer of the Debtor at all relevant times hereto. Likewise, Mr. Harris was an officer of the Debtor at all relevant times hereto.

65. As officers of the Debtor, both Mr. Lumley and Mr. Harris owed fiduciary duties to (i) the Debtor corporation, and (ii) its shareholders. Each were charged with the duty of caring for the property of the corporation and managing its affairs honestly and in good faith. The applicable fiduciary duties require that a corporate officer must at all times be loyal to his trust and act in good faith and unselfishly toward the corporation and its stockholders.

66. Pursuant to Tenn. Code Ann. §§ 48-18-301 and 48-18-403, directors and officers of corporations are required to discharge all duties under their discretionary authority: (1) in good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner reasonably believed to be in the best interest of the corporation.

67. Part of Mr. Colclazier's claims, as filed in his proofs of claims, are based on his percentage ownership of the Debtor, and, to the extent a surplus could be recognized after proper payments of corporate debts, the fiduciary duties of both Mr. Lumley and Mr. Harris would require ratable distribution among all shareholders, not just themselves.

68. While a solvent corporation does not owe a fiduciary duty to its creditors, the application of the "trust fund" doctrine allows creditors (and therefore, the Trustee herein) of an insolvent corporation to collect payment of their debts before distributions to shareholders. Under this

doctrine, as it has been applied in Tennessee, the creditors of an insolvent or dissolved corporation are entitled in equity to payment of their debts before any distribution of corporate property is made among stockholders, and these creditors also possess a right to follow its assets or property into the hands of [anyone] who is not a holder in good faith in the ordinary course of business.[3]

69. Here, the cash distributions of at least $110,100 to Mr. Lumley and Mr. Harris were made without satisfaction of the corporate debts, and without a ratable distribution of surplus amounts, if any, to the collective equity holders.

70. Both Mr. Lumley and Mr. Harris, and each of them, breached their fiduciary duties by, among other things, causing or allowing the Debtor to make the cash distributions associated with the Lumley Ownership Payment and the Harris Ownership Payment.

71. The cash distributions have damaged the bankruptcy estate in amounts applicable to the distributions, and the Plaintiff is entitled to recover such amounts from the Defendants, and each of them.

## PLAINTIFF'S FIFTH CLAIM FOR RELIEF
**(Recovery of Illegal Distributions to Shareholders of the Debtor)**
**(Tenn. Code Ann. § 48-16-401)**

72. The Plaintiff hereby restates and incorporates by reference the preceding paragraphs of this Complaint.

73. The Debtor made distributions of cash to Mr. Lumley and Mr. Harris at a time when each of them were shareholders of the Debtor.

74. After giving effect to such distributions, (i) the Debtor was unable to pay its debts as they became due, or (ii) the Debtor's assets were less than the sum of its total liabilities.

75. By reason of the illegal distributions to and for the benefit of Mr. Lumley and Mr. Harris, the Debtor has been damaged by an amount of not less than $110,100 and Plaintiff is entitled to recover that amount, with interest, from Defendants and each of them.

---

[3] *See* Tennessee Supreme Court cases of *Kradel v. Piper Indus.*, 60 S.W.3d 744, 756 (Tenn. 2001) and *Jennings, Neff & Co. v. Crystal Ice Co.*, 159 S.W. 1088, 1089 (Tenn. 1913), as cited by *Sanford v. Waugh & Co., Inc.*, 328 S.W.3d. 836 (Tenn. 2010).

## PLAINTIFF'S SIXTH CLAIM FOR RELIEF
### (Turnover of Funds)
### (11 U.S.C. § 542)

76. The Plaintiff hereby restates and incorporates by reference preceding paragraphs of this Complaint.

77. For the reasons set forth herein, and having avoided the referenced transfers to Lumley and Harris, and having established the existence of debts owed by the Defendants to the bankruptcy estate, the Trustee is entitled to the entry of an Order requiring the Defendants to turnover an amount of not less than $110,100 to the Trustee for the benefit of the bankruptcy estate.

**WHEREFORE,** the Trustee/Plaintiff having set forth the claims for relief against the Defendants respectfully prays of the Court as follows:

A. A finding that the Plaintiff is entitled to recover on his first claim for relief, **Constructive Fraudulent Transfer - Lumley**, for an amount of to be proven at trial and not less than $105,000.00.

B. A finding that the Plaintiff is entitled to recover on his second claim for relief, **Constructive Fraudulent Transfer - Harris**, for an amount of to be proven at trial and not less than $5,100.00.

C. A finding that the Plaintiff is entitled to recover on his third claim for relief, **Actual Fraudulent Transfer - Lumley**, for an amount of to be proven at trial and not less than $105,000.00.

D. A finding that the Defendants breached their fiduciary duties and an award of damages not less than $110,100.00.

E. A finding that the Defendants violated the statutory requirements for distribution of corporate funds, and an appropriate award of damages, not less than $110,100.00 related thereto.

F. A monetary judgment against the Defendants, in favor of the Plaintiff on behalf of the bankruptcy estate, in amount equal to actual damages and attorney's fees.

G. An Order requiring turnover of funds to the bankruptcy estate in an amount to be proven at trial and not less than $110,100.00.

H. That the Plaintiff recover any further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Gray Waldron*
TIMOTHY G. NIARHOS
GRAY WALDRON
REBECCA J. YIELDING
NIARHOS & WALDRON, PLC
1106 18th Avenue South
Nashville, TN 37212
(615) 320-1101 (telephone)
(615) 320-1102 (facsimile)
gray@niarhos.com
*Attorneys for Plaintiff*